ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

October 21, 2004

The Honorable Mike Stafford
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

Opinion No. GA-0262

Re: Deposit and administration of crime control and prevention district's funds under chapter 363 of the Local Government Code (RQ-0219-GA)

Dear Mr. Stafford:

On behalf of City of South Houston councilman Al Thiel, you ask three questions about the deposit and administration of crime control and prevention district ("district") funds under chapter 363 of the Local Government Code.[1]

In a resolution dated October 7, 2003, the City of South Houston directed the city's crime control and prevention district to deposit "all funds received by it in the City's treasury by depositing the same to the City's accounts in the Moody National Bank." CITY OF SOUTH HOUSTON, TEX., Resolution No. 2003-15R (Oct. 7, 2003). Noting that the crime control and prevention district had "deposited its funds in an account in the Laredo National Bank and not in the City Treasury," the city resolved "[t]hat the Crime Control and Prevention District comply with Section 363.208 [of the Local Government Code] and take immediate steps to deposit all of its funds, including such funds that may be received in the future, in the City Treasury by depositing the same in the City's pooled cash account with Moody National Bank and such funds to be withdrawn only for expenditures authorized in the District's budget." Id.

Given these circumstances, you ask first whether, under section 363.208(a), the political subdivision that created a district (the "creating political subdivision") may "deposit district funds in a 'pooled cash account.'" Request Letter, supra note 1, at 1; see TEX. LOC. GOV'T CODE ANN. § 363.208 (Vernon 1999). You ask second whether the creating political subdivision may exercise any control over district funds, under sections 363.153 and 363.208(a). See Request Letter, supra note 1, at 1; TEX. LOC. GOV'T CODE ANN. §§ 363.153, .208(a) (Vernon 1999). And you ask third whether, consistently with section 363.205(e), the creating political subdivision's governing body may amend a proposed budget, submitted by the district board, that the political subdivision rejected without "the involvement and approval of" the district board. Memorandum Brief attached to Request Letter, supra note 1, at 4; see TEX. LOC. GOV'T CODE ANN. § 363.205(e) (Vernon 1999).

---

[1] See Letter from Honorable Mike Stafford, Harris County Attorney, to Honorable Greg Abbott, Texas Attorney General (May 3, 2004) (on file with the Opinion Committee, also available at http://www.oag.state.tx.us) [hereinafter Request Letter].

Chapter 363, the Crime Control and Prevention District Act, *see* TEX. LOC. GOV'T CODE ANN. § 363.001 (Vernon 1999), authorizes certain political subdivisions—a "county with a population of more than 130,000" or a "municipality that is partially or wholly located in a county with a population of more than 5,000," *id.* § 363.051(a) (Vernon Supp. 2004)—to create crime control and prevention districts. A majority of the creating political subdivision's governing body must propose the creation of a district, and "a majority of the qualified voters of the proposed district voting at an election called and held for that purpose" must approve the governing body's proposal for a district to be created. *Id.* §§ 363.051(a), .053 (Vernon 1999 & Supp. 2004). At the same election, the voters must approve the collection of a sales tax to fund the district. *See id.* §§ 363.053, .055(a), .058 (Vernon 1999 & Supp. 2004).

Once approved by the electorate, a board of seven district residents, whom the creating political subdivision's governing body has appointed, governs the district. *See id.* § 363.101(a) (Vernon Supp. 2004); *see also id.* §§ 363.052(a), .1015 (Vernon 1999 & Supp. 2004). District funds may be used to "finance all the costs of a crime control and prevention program, including the costs for personnel, administration, expansion, and capital expenditures." *Id.* § 363.151(a) (Vernon 1999). A crime control and prevention program may include

- police and law enforcement related programs, such as "a multijurisdiction crime analysis center," "home security inspection programs," and "a drug and chemical disposal center," *id.* § 363.151(b)(1), (5), (10);

- community-related crime prevention strategies, such as "block watch programs" and "senior citizen anticrime networks," *id.* § 363.151(c)(1), (5);

- specific treatment and prevention programs, such as "work incentive programs," "street gang intervention centers," and "additional parole officers," *id.* § 363.151(d)(4), (9), (27);

- court and prosecution services, such as "community arbitration and mediation centers" and "a criminal court administrator," *id.* § 363.151(e)(2), (6); and

- "additional jails, jailers, guards, and other necessary staff," *id.* § 363.151(f).

In general, under section 363.153, the district board "shall manage, control, and administer" district funds, although the creating subdivision's governing body is required to review the district's budget, as we will discuss below. *See id.* § 363.153; *infra* at 3 (discussing the creating political subdivision's governing body's authority to approve the budget). Section 363.203 requires a district board to propose an annual budget and, under section 363.204, to hold a public hearing on the proposed annual budget. *See* TEX. LOC. GOV'T CODE ANN. §§ 363.203(a), .204(a) (Vernon 1999). The board must adopt a budget "[n]ot later than the 80th day before the date each fiscal year begins" and must submit the adopted budget to the creating political subdivision's governing body "[n]ot later than the 10th day after the date the budget is adopted." *Id.* § 363.204(d)-(e). Then, under

section 363.205, the creating political subdivision's governing body must, "[n]ot later than the 45th day before the date each fiscal year begins, . . . hold a public hearing on the budget adopted by the board and submitted to the governing body." *Id.* § 363.205(a). Section 363.205 articulates in further detail the subsequent budget approval process:

> (d)  Not later than the 30th day before the date the fiscal year begins, the governing body shall approve or reject the budget submitted by the board. The governing body may not amend the budget.
>
> (e)  If the governing body rejects the budget submitted by the board, the governing body and the board shall meet and together amend and approve the budget before the beginning of the fiscal year.
>
> (f)  The budget may be amended after the beginning of the fiscal year on approval by the board and the governing body.

*Id.* § 363.205(d)-(f). Once adopted, the district may spend its money "only for an expense included in the annual budget or an amendment to it." *Id.* § 363.206(a) (Vernon Supp. 2004).

Section 363.208 requires the board to "deposit district funds in a special account in the treasury of the" creating political subdivision. *Id.* § 363.208(a) (Vernon 1999). "District funds," other than those invested consistently with statute, "shall be deposited as received in the treasury of the political subdivision and must remain on deposit." *Id.* § 363.208(b).

You ask first whether, consistently with section 363.208, a creating political subdivision may deposit district funds in a commingled "pooled cash account." Request Letter, *supra* note 1, at 1. You have indicated that you use the term "pooled cash account," which is not statutorily defined, to refer to the city's general revenue fund.[2]

Section 363.208 requires the district board, not the creating political subdivision, to deposit its funds in a special account in the creating political subdivision's treasury. *See* TEX. LOC. GOV'T CODE ANN. § 363.208(a) (Vernon 1999). We consequently assume you to ask whether a creating political subdivision may order a district to deposit district funds in the subdivision's general revenue fund.

Chapter 363 does not define the phrase "special account." *See id.* § 363.001. A court construes an undefined statutory term "according to . . . common usage," unless the term has "acquired a technical or particular meaning," in which case the term must be construed consistently with the technical or particular meaning. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998). The phrase "special account" refers, in the world of banking, to an account established for a particular purpose that the bank keeps separate from its general funds, so that monies in the fund are disbursed in kind. *See Happy Cattle Feeders, Inc. v. First Nat'l Bank in Canyon*, 618 S.W.2d 424, 426-27

---

[2] *See* Telephone conversation with T. Scott Petty, Assistant Harris County Attorney (July 16, 2004).

(Tex. Civ. App.–Amarillo 1981, writ ref'd n.r.e.); *HBL Indus. v. Chase Manhattan Bank*, 45 B.R. 865, 868 (S.D.N.Y. 1985); *see also State v. Howard*, 908 S.W.2d 602, 604 (Tex. App.–Amarillo 1995, no writ) (stating that courts are obligated to construe "words or phrases having technical or particular meaning, such as terms of art or science, in accordance with their technical meaning"). In 1970 the Texas Supreme Court distinguished between a special account, or "special deposit," and a general account, or "general deposit":

> When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general. . . . When, on the other hand, money or its equivalent is so deposited with an accompanying agreement that the identical thing deposited shall be returned, or that the same shall be paid out for a specific purpose, the relation thus created is . . . a special deposit.

*Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183, 186 (Tex. 1970) (quoting *McBride v. Amer. Ry. & Lighting Co.*, 127 S.W. 229 (Tex. Civ. App. 1910, no writ)); *accord Lee v. Gutierrez*, 876 S.W.2d 382, 385 (Tex. App.–Austin 1994, writ denied) (quoting *Hudnall*). According to the court, a depositor who gives a bank "the right to commingle his deposit with other funds owned by the bank . . . creates only a general deposit." *Hudnall*, 458 S.W.2d at 186 (citing *Security Nat'l Bank Savings & Trust Co. v. Moberly*, 101 S.W.2d 33 (Mo. 1936)).

By statute, special accounts for county funds are to be kept separate from a county's general revenue funds. Section 113.021(b) of the Local Government Code, pertaining to the duties of a county treasurer, directs the treasurer to deposit "fees, commissions, funds, and other" county funds collected by a county officer in a special fund in the county depository. TEX. LOC. GOV'T CODE ANN. § 113.021(a)-(b) (Vernon 1999). Money deposited in such a "special fund account shall be kept separate from other treasury funds." *State v. $50,600.00*, 800 S.W.2d 872, 881 (Tex. App.–San Antonio 1990, writ denied). Similarly, although recognizances, bail bonds, fines, forfeitures, judgments, jury fees, and other receivables collected under chapter 103 of the Code of Criminal Procedure are to be deposited into the county treasury, the money is to be deposited "in a special fund . . . for the [local] community supervision and corrections department." TEX. CODE CRIM. PROC. ANN. art. 103.004(a), (d) (Vernon Supp. 2004). We have not found a similar express directive for municipal funds.

Previous opinions of this office also suggest that a special account typically is kept separate from general accounts. Attorney General Opinion DM-398, for example, addressed whether a tax assessor-collector may deposit the dealer's motor vehicle inventory escrow account in a special account. *See* Tex. Att'y Gen. Op. No. DM-398 (1996) at 1. Finding the requisite statutory authority, the opinion states that the assessor-collector may "separate these funds [from other county funds] in a special account." *Id.* at 2. Attorney General Letter Opinion 92-7 similarly concludes that records management and preservation fees should be deposited in a special account, separate from a county's general revenue funds, to avoid "a commingling of funds." Tex. Att'y Gen. LO-92-7, at 2; *see also* Tex. Att'y Gen. Op. No. JM-530 (1986) at 6-7 (distinguishing between a general fund and a special fund).

We accordingly conclude, to answer your first question, that district funds may not be placed in the creating political subdivision's general revenue fund. Commingling district funds with other City funds is not permitted, even assuming that the City of South Houston's records completely account for the use of district funds separately from other funds.[3] *See* Tex. Att'y Gen. LO-92-7, at 2 (indicating that a special fund requirement avoids the commingling of funds). While the funds must be deposited in the subdivision's depository, the funds must be deposited in a special account separate from the general revenue fund.

You ask next whether Local Government Code sections 363.153 and 363.208(a) conflict with respect to the amount of control the creating political subdivision exercises over district funds. *See* Request Letter, *supra* note 1, at 1. Section 363.153 provides a district board with authority to "manage, control, and administer district funds," except to the extent the board must work with the creating political subdivision's governing body on the budget. TEX. LOC. GOV'T CODE ANN. § 363.153 (Vernon 1999). Section 363.208(a), as we have just made clear, requires the district to deposit its funds in a special account in the creating political subdivision's depository. *See id.* § 363.208(a); *see supra* at 3.

To a very limited extent, section 363.208(a) plainly restricts a district board's broad authority under section 363.153 to "manage, control, and administer district funds." *Id.* § 363.153 (Vernon 1999). Under section 363.208, a district board is not free to deposit the funds in an account or bank of its choosing, but must instead comply with section 363.208(a). Where a general statute conflicts irreconcilably with a special provision, so that both cannot be fully effectuated, "the special . . . provision prevails as an exception to the general provision, unless the general provision is the later enactment." TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998). Here, section 363.208 is a special statute relating only to the choice of a depository, while section 363.153 defines a district board's authority over district funds generally. In addition, sections 363.153 and 363.208 were enacted simultaneously in 1989, both being part of a single bill. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 664, § 1, secs. 5.02, 6.10(a), 1989 Tex. Gen. Laws 2181, 2187, 2189.

We accordingly construe section 363.208(a) as a narrow exception to the reach of the district board's general authority under section 363.153. A court should, if possible, construe statutes to harmonize with each other. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex.1984). In this way, we harmonize the statutes, and both are effectuated. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (stating that the legislature intends an entire statute to be effective).

You finally ask whether a creating political subdivision's governing body may amend and pass the district's budget without district approval. *See* Request Letter, *supra* note 1, at 1. You inform us that your questions concern a budget that the district board had accepted but that the political subdivision rejected before the fiscal year commenced.[4] Under section 363.205, a

---

[3]*See* Letter from Thomas F. Lay, City of South Houston Attorney, to Honorable Greg Abbott, Texas Attorney General, at 1 (Sept. 20, 2004) (averring that the City "records each department as a separate account").

[4]*See* Telephone conversation with T. Scott Petty, Assistant Harris County Attorney (July 21, 2004).

subdivision's governing body must approve or reject the budget submitted by the district board without amending the budget. *See* TEX. LOC. GOV'T CODE ANN. § 363.205 (Vernon 1999). If the governing body rejects the budget, the governing body and the district board must meet and amend the budget *together*. *See id.* § 363.205(e). The two entities must likewise approve the budget together before the beginning of the fiscal year. *See id.*

Consequently, under section 363.205(e)'s plain language, a creating political subdivision's governing body may not amend and pass the district's budget without district approval.

## S U M M A R Y

Under section 363.208(a) of the Local Government Code, the funds of a crime control and prevention district (a "district") must be placed in a special account, separate from the creating political subdivision's general fund, in the creating political subdivision's depository. To the extent section 363.208(a) conflicts with section 363.153, which generally requires a board to "manage, control, and administer district funds," section 363.208(a) creates a specific exception to the reach of the district board's general authority under section 363.153. Finally, under section 363.205(e)'s plain language, a creating political subdivision's governing body may not amend and pass the district's budget without district approval.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee